UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

UNITED STATES OF AMERICA,

v.                                                    CASE NO. 5:23-CR-00428-JKP

SERGIO RENATO TAPIA,

ORDER DENYING DEFENDANT'S POST-VERDICT MOTION FOR
JUDGMENT OF ACQUITTAL, FOR A NEW TRIAL, OR FOR DISMISSAL

Before the Court is Defendant Sergio Renato Tapia's Post-Verdict Motion for Judgment of Acquittal, for a New Trial, or for Dismissal ("the Motion"), (*ECF No. 115*). The Government filed a Response, (*ECF No. 116*). For the reasons discussed herein, the Court **DENIES** the Motion.

BACKGROUND

On August 16, 2023, the grand jury returned a one-count Indictment charging Defendant with threatening to murder a federal officer in violation of 18 U.S.C. § 115(a)(1)(B). *ECF No. 12*. After a three-day trial, the jury convicted Defendant of the sole count in the Indictment.

On May 5, 2026, Defendant filed the instant Post-Verdict Motion for Judgment of Acquittal, for a New Trial, or for Dismissal ("the Motion"), (*ECF No. 115*). In the Motion, Defendant challenges the sufficiency of the evidence with respect to the identity of the victim and Defendant's specific intent in committing the charged offense. *Id*. at 2–6. Defendant contends the rule of lenity and constitutional avoidance apply in this case. *Id*. at 6–7. Defendant argues he is entitled to relief regarding the defense of insanity. *Id*. at 7–8. Defendant also asserts 18 U.S.C. § 115(a)(1)(B) is unconstitutionally vague. *Id*. at 8. Finally, Defendant requests a new trial because the evidence weighs heavily against the verdict. *Id*. at 12.

1

**LEGAL STANDARDS**

I.    **Motion for Judgment of Acquittal and Motion for New Trial**

Rule 29(a) of the Federal Rules of Criminal Procedure provides that after the government closes its evidence or after the close of all the evidence, on a defendant's motion, the court "must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." In determining whether there is sufficient evidence to support a conviction, the Court must determine "whether a rational juror could have found the elements of the offense proved beyond a reasonable doubt. In so doing, [the Court] view[s] the evidence in the light most favorable to the government, with all reasonable inferences and credibility choices made in support of the jury verdict." *United States v. Valles*, 484 F.3d 745, 752 (5th Cir. 2007), *cert. denied*, 551 U.S. 1155 (2007).[1] The Fifth Circuit Court of Appeals reviews *de novo* a judgment of acquittal issued by a district court, applying the same standard in reviewing the judgment as that applicable in the district court. *United States v. Martin*, 156 F. App'x 629, 629–30 (5th Cir. 2005), *citing United States v. Deville*, 278 F.3d 500 (5th Cir. 2002).

A motion for judgment of acquittal should only be granted when, viewing the evidence in a light most favorable to the government, no reasonable fact finder could find the evidence sufficient to support the jury's verdict. *Id*. "Juries are free to use their common sense and apply common knowledge, observation, and experience gained in the ordinary affairs of life when giving effect to the inferences that may reasonably be drawn from the evidence." *United States v. Flores–Chapa*, 48 F.3d 156, 161 (5th Cir. 1995).

Rule 33(a) of the Federal Rules of Criminal Procedure allows the court, upon a

---

[1] Legal scholar Charles Alan Wright explains the standard that applies to a motion for judgment of acquittal in Federal Practice and Procedure: On a motion for judgment of acquittal, the court is required to approach the evidence from a standpoint most favorable to the Government, and to assume the truth of the evidence offered by the prosecution. If on this basis there is substantial evidence justifying an inference of guilt, the motion for acquittal must be denied. 2A Charles Alan Wright et al., Fed. Prac. & Proc. Crim. § 467 (4th ed. 2026).

defendant's motion, to "vacate any judgment and grant a new trial if the interest of justice so requires." A motion for new trial should not be granted "unless there would be a miscarriage of justice or the weight of evidence preponderates against the verdict. A new trial is granted only upon demonstration of adverse effects on substantial rights of a defendant." *United States v. Wall*, 389 F.3d 457, 466 (5th Cir. 2004), *cert. denied*, 544 U.S. 978 (2005).

## ANALYSIS

At the close of all evidence, Defendant orally moved for judgment of acquittal, and the Court denied the motion. The jury returned its verdict on April 22, 2026. *ECF No. 109*. Defendant now renews his motion in a post-verdict motion for judgment of acquittal. *ECF No. 115*. The Government has filed its Response, (*ECF No. 116*).

A post-verdict motion for judgment of acquittal is judged by the same standard as a motion for judgment of acquittal at the close of the Government's evidence or at the close of all of the evidence. The Court is required to consider "if the evidence is insufficient to sustain a conviction." *United States v. Burns*, 597 F.2d 939, 941 (5th Cir. 1979).

### I.   General Sufficiency Challenges

Defendant's Motion essentially invites the Court to circumvent or disregard the jury's guilty verdict and find him not guilty. *ECF No. 115*. The Court declines Defendant's invitation.

Juries typically resolve disputed factual issues to determine whether a threat is a true threat. "A trial on the merits is necessary to determine whether [Defendant's] statements were true threats." *United States v. Burger*, 170 F.4th 395, 403 (5th Cir. 2026). "Whether a statement is a true threat is generally a question for the jury." *Id.*; *see United States v. Daughenbaugh*, 49 F.3d 171, 173 (5th Cir. 1995) ("Guided by instructions . . . removing protected speech from the definition of 'threat,' the jury is to determine the nature of the subject communication.").

3

Although the defendant in *Burger* was charged with violating 18 U.S.C. § 875(c), the Fifth Circuit's conclusion—that the jury must resolve factual disputes in deciding whether Defendant's communication was a true threat or protected speech—applies in this 18 U.S.C. § 115(a)(1)(B) case.[2] As relayed by the *Burger* Court, "[h]ere, there are disputed facts bearing on whether Burger's statements were true threats—that is, whether Burger "consciously disregarded a substantial risk that his communications would be viewed as threatening violence," *Counterman*, 600 U.S. at 69, and "an objectively reasonable person would interpret the speech as a serious expression of an intent to cause a present or future harm." *Burger*, 170 F.4th at 404 (citing *U.S. v. Jubert,* 139 F.4th 484, 490 (5th Cir. 2025) (quoting *Porter v. Ascension Par. Sch. Bd.*, 393 F.3d 608, 616 (5th Cir. 2004)). In this case, certain aspects of Defendant's voicemail were undisputed — (1) he made the statements; (2) he identified himself by name; (3) he provided his address; (4) the date and time the statements were made; (5) the message was fifty-eight seconds long; and (6) a sound similar to the racking of a gun was audible near the end of the message. As such, this case concerned the context and meaning of the statements in real time. The Fifth Circuit highlighted the issue of context as follows:

> So, to be a "true threat," the statement, "***when taken in context***," must convey a real possibility that violence will follow. *Counterman v. Colorado*, 600 U.S. 66, 74 (2023). This distinguishes a "true threat" from jests or hyperbole. *Id*. Further, the speaker must be "aware 'that others could regard his statements as' threatening violence and 'deliver[ ] them anyway.'" *Id*. at 79, 143 S.Ct. 2106 (quoting *Elonis v. United States*, 575 U.S. 723, 746 (2015) (Alito, J., concurring in part and dissenting in part)). In short, when it comes to the true-threats analysis, "***context is critical***." *Bailey v. Iles*, 87 F.4th 275, 285 (5th Cir. 2023). For example, a statement in a play or a movie might reasonably be viewed differently from the same statement left in a voicemail by a masked number. *See Black*, 538 U.S. at 366, 123 S.Ct. 1536. Another part of this context is how particularly the

---

[2] This Court also understands the district court in *Burger* granted a pretrial motion to dismiss under Rule 12 and the issue here is whether Defendant is entitled to relief under Rule 29. The central point is the same – Defendant, in essence, wants the Court to take one of two actions: (1) serve as a thirteenth juror and reweigh the evidence to reach a different result or (2) find all facts undisputed and rule as a matter of law that Defendant's statements on the voicemail do not constitute true threats. The Court will not do either.

alleged threat identifies a time, place, and target. But a threat's lack of particularity is relevant only insofar as it tends to negate an assertion that an objectively reasonable listener would conclude that threatened violence will occur. *See United States v. Perez*, 43 F.4th 437, 443–44 (5th Cir. 2022).

*Burger*, 170 F.4th 395, 402 (5th Cir. 2026). The jury, and not the Court, was required to resolve any contextual distinctions to determine whether Defendant's statements were true threats. Applying the proper standard for Rule 29 motions, the Court finds that a reasonable juror or jury would have found the evidence sufficient to convict the Defendant.

## II.    Statutory Interpretation and Construction of Penal Statutes

A discussion of some general principles regarding interpreting and construing penal statutes will be helpful in resolving the additional issues raised in the Motion.

Professor Joel S. Johnson, Law Professor at Pepperdine University's Caruso School of Law, has written extensively on the topic of interpreting and construing criminal laws. Professor Johnson first recognizes the well-established principle for interpreting text, which is for judges "to show fidelity to the text."[3] Professor Johnson also identifies the subtle distinction between interpretation and construction;[4] two distinct stages of textual analysis.[5]

"The first stage—interpretation—is the process of 'discover [ing] the linguistic meaning or semantic content of the legal text.'"[6] The second stage—construction—is "the process that gives a text legal effect . . . [b]y translating the linguistic meaning into legal doctrine or by applying or implementing the text."[7]

---

[3] Joel S. Johnson, Ad Hoc Constructions of Penal Statutes, 100 Notre Dame L. Rev. 73, 85 (2024).
[4] Not all agree with the proposition that there is a distinction between interpretation and construction. "Some authors have attempted to introduce a distinction between interpretation and construction. Etymologically there is, perhaps, a distinction; but it has not been accepted by the profession. For practical purposes any such distinction may be ignored, in view of the real object of both interpretation and construction, which is merely to ascertain the meaning and will of the lawmaking body, in order that it may be enforced. William M. Lile, et al., Brief Making and the Use of Law Books 337 (3d ed. 1914). Garner's Dictionary of Legal Usage 3d Ed. 2011.
[5] Joel S. Johnson, Vagueness Avoidance, 110 Va. L. Rev. 71, 86–87 (2024).
[6] *Id*.
[7] *Id*.

Most practitioners and judges use the term interpretation for both stages of the analytical process. *Id*. In most cases, treating the analytical process as one interpretive activity instead of two is not controversial or unusual. *Id*. For purposes of resolving the instant matter, the Court need not settle the interpretation-construction distinction debate, but it recognizes, as a practical matter, that there may be two mental acts involved in textual analysis: (1) discerning the meaning of the text and (2) an application stage.[8]

It is also important to understand the difference between ambiguity and vagueness. Professor Johnson states,

> ***Ambiguity refers to linguistic indeterminacy*** that arises when a term can be used in more than one sense such that it is open to a ***discrete number of possible meanings***. Ambiguity can typically be resolved through interpretation, the process of recovering the semantic content of the legal text by looking to materials such as statutory context, rules of grammar, dictionaries, and usage norms embodied in descriptive canons of statutory interpretation. A term exhibits ***vagueness***, by contrast, when there are difficult, borderline cases to which the ***indeterminate term*** may or may not apply, with the result that it is open to practically ***innumerable ... applications***. Vagueness cannot usually be resolved through mere interpretation, but only through construction, the process of giv[ing] a text legal effect by translating the linguistic meaning into legal doctrine.[9]

Therefore, a court resolves ambiguity through interpretation and vagueness through construction. Textual analysis, when appropriate, may also include reliance on certain tools, such as dictionaries and canons of construction. *Id*. at 86.

Professor Johnson illuminates the distinction between descriptive canons and substantive canons. He explains,

> Scholars divide canons into two basic categories: descriptive canons (sometimes called "linguistic" or "semantic" canons) and substantive canons (sometimes

---

[8] "When it comes to the use of authoritative texts, these terms denote different mental acts. *Interpretation* = the ascertainment of a text's meaning; specif., the determination of how a text applies to particular facts. *Application* = the process by which, starting with certain facts, one ascertains the legal category under which the facts should be placed, and the rule of law that is to govern them." *See* Francis Lieber, Legal and Political Hermeneutics 247 (William G. Hammond ed., 3 d ed. 1880). Garner's Dictionary of Legal Usage 3d Ed. 2011.
[9] Joel S. Johnson, Ad Hoc Constructions of Penal Statutes, 100 Notre Dame L. Rev. 73, 122–23 (2024)

called "normative" canons). ***Descriptive canons*** capture generalizations about how particular linguistic constructions are used and understood by competent speakers of English. ***Substantive canons*** capture "nonlinguistic considerations that weigh in favor of particular legal results.[10]

Here, Defendant relies on two substantive canons of construction in the Motion. Defendant states the Court should apply the rule of lenity and constitutional avoidance to rule in his favor. *ECF No. 115* at 6.

### A.    Rule of Lenity

The rule of lenity applies only when "there is grievous ambiguity or uncertainty in the statute." *Arreola v. Bondi*, No. 25-60091, 2025 WL 2694844, at *1 (5th Cir. Sept. 22, 2025) citing *Shaw v. United States*, 580 U.S. 63, 71 (2016). "The rule [of lenity] applies only when, after consulting traditional canons of statutory construction, we are left with an ambiguous statute." *Shular v. United States*, 589 U.S. 154, 165 (2020); *United States v. Shabani*, 513 U.S. 10, 17 (1994).

### B.    Constitutional Avoidance

As Professor Johnson notes, "there are two types of constitutional avoidance canons."[11] First, "[u]nder the unconstitutionality canon, if one construction would render a statute unconstitutional, a court should adopt any plausible construction that would save it." *Id*. Second, "[u]nder the doubts canon, if one construction would raise serious constitutional questions, a court should adopt any plausible construction that would avoid those questions." *Id*. Ambiguity must exist for either version of avoidance to apply. *Id*. "Both canons are triggered by ambiguity: a court will not consider avoidance unless it first determines that the statutory language can be fairly understood to have two or more discrete semantic meanings, one of which is unconstitutional or raises serious constitutional questions." *Id*.

---

[10] Joel S. Johnson, Ad Hoc Constructions of Penal Statutes, 100 Notre Dame L. Rev. 73, 86 (2024)
[11] Joel S. Johnson, Ad Hoc Constructions of Penal Statutes, 100 Notre Dame L. Rev. 73, 89 (2024)

Here, because the Court finds the statute of conviction, 18 U.S.C. § 115(a)(1)(B), is not ambiguous, the rule of lenity does not apply. Likewise, neither version of constitutional avoidance applies.

## III.     Void For Vagueness

The doctrine of vagueness involves indeterminate language, which means a word or phrase that is "not definite, distinct, or precise; [or] impossible to know about definitely or exactly." *Indeterminate*, Black's Law Dictionary (12th Ed. 2024).[12] The legal ailment of vagueness extends beyond the problem of lack of fair notice. *Kramer v. Price,* 712 F.2d 174, 176 (5th Cir. 1983).

> The Supreme Court has defined vagueness as follows,
>
> As generally stated, the void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement. Although the doctrine focuses both on actual notice to citizens and arbitrary enforcement, we have recognized recently that the more important aspect of vagueness doctrine is not actual notice, but the other principal element of the doctrine—the requirement that a legislature establish minimal guidelines to govern law enforcement. Where the legislature fails to provide such minimal guidelines, a criminal statute may permit a standardless sweep [that] allows policemen, prosecutors, and juries to pursue their personal predilections.

*Kolender v. Lawson*, 461 U.S. 352, 357–58, (1983) (citations omitted); *see Hynes v. Mayor & Council of Borough of Oradell*, 1976, 425 U.S. 610, 622 (1976); *Grayned v. City of Rockford*, 1972, 408 U.S. 104, 108–09 (1972); *see also* Note, The Void-for-Vagueness Doctrine in the Supreme Court, 109 U. Pa. L. Rev. 67, 75–85 (1960). When a statute is capable of reaching first amendment freedoms, the doctrine of vagueness "demands a greater degree of specificity than in other contexts." *Smith v. Goguen*, 415 U.S. 566 , 573 (1974).

---

[12] Indeterminate also means "not definitely or precisely determined or fixed: vague; not known in advance; not leading to a definite end or result; having an infinite number of solutions. *Merriam-Webster Dictionary*, https://www.merriam-webster.com/dictionary/indeterminate (last visited May 21, 2026).

Defendant's vagueness challenge centers on Section 115(a)(1)(B)'s *mens rea* regarding a person's threat to murder "a Federal law enforcement officer . . . with intent to impede, intimidate, or interfere . . . with such law enforcement officer while engaged in the performance of official duties, or with intent to retaliate against such . . . law enforcement officer on account of the performance of official duties . . ." The Court concludes 115(a)(1)(B)'s language is not vague, facially or as applied to Defendant, because there is no indeterminacy. First, the statute only prohibits threats that constitute "true threats" as courts have defined that term. Second, the statute only proscribes threats (true threats) made with the intent to impede, intimidate, or interfere with certain officials while in the performance of their duties or with the intent to retaliate against those officials on account of their official duties.

Here, Defendant made a threat to kill a specific federal law enforcement officer while the officer was engaged in his duties or with the intent to retaliate against the specific officer on account of his official duties. The jury heard the voicemail message Defendant left on the park ranger's office phone. Defendant identified himself and described the officer he threatened to kill. Park Ranger Aaron Heyer, the alleged subject of Defendant's threat, testified. The Court, over the Government's strong objection, admitted pictures of an interpretive ranger who Defendant never encountered during his visits to the park where Ranger Heyer worked. Defendant's witnesses testified regarding his mental health, their interaction with him, how he handled stressful situations, his living conditions, and provided reasons for his visits to the park. The jury heard and saw the evidence and returned a guilty verdict in this case. The Court instructed the jury on Defendant's diminished capacity argument and insanity defense. The jury, by its verdict, rejected Defendant's contentions.

The Court did not construe (or apply) the statutory text more broadly or more narrowly

9

than Congress drafted it. The Court did not add any words to the text or subtract any words from the text to affect how the jury might apply the statutory language to facts of the case. The Court did not act to save the statute from any constitutional infirmities. As the Court stated above, section 115(a)(1)(B) is neither ambiguous nor vague.

The Supreme Court, in *United States v. Williams*, 553 U.S. 285, 306–07 (2008), summarized the questions judges and juries resolve each day. The Court stated,

> But courts and juries every day pass upon knowledge, belief and intent—the state of men's minds—having before them no more than evidence of their words and conduct, from which, in ordinary human experience, mental condition may be inferred. *American Communications Assn. v. Douds*, 339 U.S. 382, 411 (1950) (citing 2 J. Wigmore, Evidence §§ 244, 256 et seq. (3d ed. 1940)). And they similarly pass every day upon the reasonable import of a defendant's statements— whether, for example, they fairly convey a false representation, see, e.g., 18 U.S.C. § 1621 (criminalizing perjury), or a threat of physical injury, ***see, e.g., § 115(a)(1) (criminalizing threats to assault federal officials)***.

*Id*. (emphasis added).

As explained above, the Court finds any rational juror would have found the evidence sufficient to satisfy the elements of the charged offense beyond a reasonable doubt. There was also no miscarriage of justice in this case.

**CONCLUSION**

For all the reasons stated above, the Court **DENIES** Defendant Sergio Renato Tapia's Post-Verdict Motion for Judgment of Acquittal, for a New Trail, or for Dismissal, (*ECF No. 115*).

It is so ORDERED.
SIGNED this 28th day of May, 2026.

JASON PULLIAM
UNITED STATES DISTRICT JUDGE

10